# CHARLESTON.

## New Martinsville v. Dunlap.

Submitted January 17, 1890.—Decided January 30, 1890.

Sale of Intoxicating Liquors—License.

The provision in the act of February 13, 1871, amending the charter of the town of New Martinsville, in Wetzel county, that no license to sell spirituous liquors within one mile of said town shall be granted by the board of supervisors of said county without the consent of said town, will not prevent the granting of license to sell spirituous liquors at a place within the town of Brooklyn, with the consent of said town of Brooklyn, and against the objection of said town of New Martinsville, though the place at which such liquors are to be sold be within one mile of the corporate limits of the town of New Martinsville.

*R. McEldowney* and *E. B. Snodgrass* for plaintiffs in error.

*S. B. Hall* for defendant in error.

BRANNON, JUDGE:

On August 23, 1889, J. P. Dunlap asked the County Court of the county of Wetzel for authority to obtain a license to sell at retail spirituous liquors at his place of business, the Brooklyn House, in the town of Brooklyn, and presented a certificate showing the consent of the counsel of said town to the granting of such license. The town of New Martinsville appeared, and resisted the application of Dunlap, on the ground that the place where such license was to be exercised was within one mile of the corporate limits of the town of New Martinsville. The County Court overruled the objection of said town of New Martinsville, and granted authority to Dunlap to obtain such license. Thereupon the town of New Martinsville obtained from the judge of the fourth circuit a writ of *certiorari* directed to said County Court, commanding it to certify to said Circuit Court for review the proceedings had before said County Court in the matter aforesaid. The Circuit Court reversed the said order of the County Court granting authority to Dunlap to obtain such license, and Dunlap has obtained this writ or error.

Brooklyn was incorporated as a town in May, 1889, under chapter 47, Code 1887. The theory upon which the town of New Martinsville would rest its claim to sustain its writ of *certiorari*, and forbid the license to Dunlap, is based on section twenty of an act passed February 13, 1871, amending the charter of said town, which reads as follows: "Whenever anything, for which a State license is required, is to be done within the said town, the council may require a town license therefor, and may impose a license thereon for the use of the town; but no license to sell strong or spirituous liquors or wines, beer, ale, porter, or drinks of like nature, within one mile of the corporate limits thereof, shall be granted by the board of supervisors of the county of Wetzel, unless the person applying therefor shall produce to said board the certificate of the council of said town of its consent to the granting of such license."

It is contended on behalf of New Martinsville that, as the law now is, that town has the vested corporate right to forbid the granting of license by the later incorporated town of Brooklyn and the County Court of Wetzel, within said

limit of one mile, though, as is the case with Dunlap, the place where the license is to be exercised be within the corporate limits of Brooklyn.

We do not think this claim of New Martinsville can be sustained. It will be noted that the letter of the clause of the act of 1871, above quoted, is that no license to sell liquor within one mile of the corporate limits of New Martinsville "shall be granted by the board of supervisors of the county of Wetzel," not by the council of a town. The meaning of this is simply that no county license, so to call it, shall be granted to be exercised within said one-mile limit; and the legislature had not in its mind the contingency or event which afterwards occurred, the existence of another town within such limit. Such is the letter of the act, and when it is sought to use the act to deprive the town of Brooklyn of a power and privilege exercised by all cities and towns in the State, it is reasonable to hold the statute to its letter. But outside of this mere letter of the statute, I think we can say such construction is also the spirit and true purpose of this special act amending the charter of New Martinsville. At the date of that act, section 33, c. 47, of the Code of 1868, gave towns the power to impose licenses, and provided that "no license to sell spirituous liquors or wine, beer, ale, por-ter or drink of like nature, within the town or village, or within one mile of the corporate limits thereof, unless it be within another corporate town or village, shall be granted by the board of supervisors of the county in which any portion of such town or village may lie," without the consent of the council thereof. This provision is continued in said chapter 47, under its re-enactment in 1882, as will be seen in section 33, c. 47, Code 1887.

It was hardly the purpose of the legislature to give New Martinsville an exclusive privilege which would materially cripple the powers of any other town which might be formed within this mile limit, in respect to this important matter of not allowing or forbidding such license within its corporate limits, when the general law contained in Code, c. 47, respecting towns, which was in force when the act amending the charter of New Martinsville was passed, gave to towns the important power to allow or forbid liquor-license

within their limits. It does not seem reasonable to say that the legislature intended to so highly favor one town to the great prejudice of another. Nor should such a construction be given when it contravenes a uniform public policy on the part of the legislature, applicable to towns generally, as manifested in said provision—that of investing them with the option to say whether they would have liquor-license or not—and this provision ·rendering license non-operative within one mile of a town should not apply where another town came within that limit. From these provisions it is plain to me that it was intended that every town should enjoy this local option, notwithstanding it might bring the sale of liquors within a mile of the limits of another town. If it be asked : Why then did not the act of 1871 amending New Martinsville's charter, qualify the provision that no license granted by the supervisors should operate within one mile of its limits by the language, "unless it be within another corporate town or village," found in section 33, c. 47, Code 1868, or language to the same effect? the reply is : There was then no town within that limit.

On the process of reasoning adopted by New Martinsville, it could restrict the powers of an important town afterwards formed by refusing license within this one mile limit, though that town wished such license; and it might be claimed, not without a show of reason, that its consent could impose license within that limit, though the other town resisted it. Had there been, at the date of the passage of the act of 1871, another town in existence with limits within one mile of those of New Martinsville, it could not be successfully maintained that New Martinsville could forbid license within the limits of its neighboring town under this one mile clause in the act of 1871, because this clause in the act of 1871 does not expressly say that no license shall operate within that mile, even though another town fall within that limit, while chapter 47, then in force, expressly gave towns the power to give or withhold license, and expressly provided that the clause, that no license should operate within one mile of a town, should not apply where another town came within such limit. Had there been then another town within that limit, we would look at both this act of 1871 and chapter 47 of the

Code, and finding that the latter granted to one town the power to give license, and provided that where a town came within the one mile limit the clause forbidding a license from operating within the mile limit should not apply, and, finding that the act of 1871 did not expressly negative this power in that part of the one mile occupied by the other town, we should say that the neighboring town would enjoy the right to give or refuse license. I can not see why the fact that Brooklyn was formed later should change it. Therefore I think that this clause in the act of 1871, providing that no license should be granted within one mile of New Martinsville without its consent, is qualified and limited in its application by the exception in section 33, c. 47, of the Code, providing that, where a town comes within the one mile therein spoken of, the provision that a license should not operate in that limit does not apply.

Furthermore, section 9, c. 5, Acts 1881, (Code 1887, p. 277) provides that "no license for the sale of intoxicating liquors in any incorporated city, town, or village, or within one mile of the corporate limits thereof, unless it be within another incorporated city, town, or village, shall be granted without the consent of the municipal authorities thereof." Here we find the law still declaring that while, generally, no grant of license shall operate within one mile of a town without its consent, yet that such is not the case where a town comes within that mile. And why not the case? Because by section 33, c. 47, of the Code, towns are given the power to allow or forbid liquor license, and by that exception in section 9, c. 39, of the Code, it was intended to recognize and preserve that power so conferred on towns by section 33, c. 47. Even if the clause in the act of 1871, relied on by New Martinsville, were not to be construed as qualified by chapter 47 of the Code, as found in the edition of 1868, and continued in its re-enactment in 1882, (as I think it was qualified) this re-enactment of chapter 39 in 1881, being general in its terms, would modify or restrict the operation of the clause in the act of 1871. Under these statutes—under both chapter 47 of the Code of 1868, and chapter 39 as re-enacted in 1881—the very moment the town of Brooklyn came into existence it was invested with the powers conferred on it by chapter

47 of the Code, among them the power to allow or forbid liquor license within its limits, in common with other towns of the State, and that same moment the provision in the act of 1871 relative to the town of New Martinsville, providing that no license should operate within one mile of its limits, was qualified and ceased to operate within the corporate limits of the town of Brooklyn. As both can not operate as to that part of Brooklyn within one mile of New Martinsville—as both statutes can not stand together as to that territory—the act of 1871 must thus far yield to the later enacted general law contained in section 9, c. 39, of the Code, as re-enacted in 1881.

Counsel for New Martinsville contends that there is no express repeal of the provision in the act of 1871, and that it ought not to be held that there is a repeal by implication, and quotes 1 Dill. Mun. Corp. § 87, as follows: "It is a principle of very extensive operation, that statutes of a general nature do not repeal, by implication, charters and special acts passed for the benefit of particular municipalities, but they do so when this appears to have been the purpose of the legislature. If both the general and the special acts can stand, they will be construed accordingly. If one must give way, it will depend upon the supposed intention of the law-maker, to be collected from the entire legislation, whether the charter is superseded by the general statute, or whether the special charter provisions apply to the municipality, in exclusion of the general enactments. So, particular provisions of charters should be read and construed in the light of the whole instrument, of all preceding charters, of the general legislation of the State, and of the object of the legislature in the erection of municipalities as before explained. Section 88. The presumption is not lightly to be indulged that the legislature has by implication repealed, as respects a particular municipality, or as respects all municipalities, laws of a general nature, elsewhere in force throughout the State; yet a charter or special act passed subsequent to the general law, and plainly irreconcilable with it, will, to the extent of the conflict, operate a repeal of the latter by implication. But, by a well-known rule, founded on solid reasons, such repeals are not favored; and the principle of implied repeals ought to be applied with extreme caution."

I think there is nothing here in rational conflict with the proposition above stated. When we look at the public policy of the State as regards the local option on the subject of liquor-license given to towns; when we reflect that the general law regulating towns gives them the right to speak for or against license, when such has long been, and is still, the statute-law on the subject, and inquire as to the intention of the legislature, in 1881, in enacting section 9, c. 39, of the Code—we must conclude that it did not design to allow one town to forbid license within the limit of another town, though afterwards formed, thus allowing exclusive privilege in one to the prejudice of another, but that, in the interest of uniformity, it was the intention to put all on an equal footing in this respect, and thus subserve the policy of the State to accord to all towns the right of option in this important matter. This modification or repeal of the act of 1871 is plain, and to so hold is not in conflict with the text of Dillon, above quoted.

The case of *Packing Co.* v. *City of Chicago*, 88 Ill. 221, is cited by defendant in error's counsel. Its syllabus is: "A statute gave cities and villages the power to direct the location and regulate the management and construction of pork-packing houses within their limits, and one mile beyond. The plaintiff carried on a packing-house in the town of Lake, within one mile of the city of Chicago, and licensed by the town. Held, (1) that the power to regulate authorized the requirement of a license; and (2) that the city of Chicago might legally require the plaintiff to be licensed by it, although he was previously licensed by the town." This is not binding authority on us. But I do not think it can aid the defendant in error. Observe that there the general law applicable to all cities and towns in Illinois, as the opinion in that case states, gave them power to direct the location of and manage and regulate packing-houses, renderies, tallow chandleries, bone-factories, soap-factories, and tanneries, vocations which may be hurtful to public health, and thus be nuisances, and the court held this general law vesting such power in all cities and towns over-rode the power to license given the town; and observe, further, that this statute gave cities the right to regulate vocations which might hurt the health of cities—that is, to regu-

late nuisances—and it involved the right of a great and populous city to protect the health of its people against nuisances which, perhaps, it might do without such statute, even though licensed by a neighboring town. This case depends on the particular status and public policy of our own State, and we can derive very little light from abroad to aid us in its decision.

The judgment of the Circuit Court of Wetzel county is reversed and annulled with costs in this Court to appellant, and, this Court rendering such judgment as that court ought to have rendered, the said writ of *certiorari* is dismissed, with costs in said Circuit Court to the defendants who appeared thereto in said Circuit Court.

REVERSED.